**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**KIMBERLY MILLER,**

    Plaintiff,

v.                                                                                                                               **Civil Action No. 3:10-CV-33
(BAILEY)**

**MARINER FINANCE, LLC,**
a foreign limited liability company;
**DANIEL CAREY,** a manager with
Mariner Finance, LLC;
**DONALD CLAWSON,** assistant vice
president for Mariner Finance, LLC; and
**NATIONWIDE MUTUAL INSURANCE COMPANY,**
a foreign insurance company,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are Defendant Mariner Finance, LLC's Motion to Dismiss or in the Alternative to Quash Service of Process [Doc. 5]; Defendant Daniel Carey's Motion to Dismiss [Doc. 6]; and Defendant Donald Clawson's Motion to Dismiss [Doc. 7], all filed on March 31, 2010. Plaintiff responded on May 28, 2010. Defendants did not reply. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the Mariner motion [Doc. 5] should be **GRANTED IN PART**, and the Carey and Clawson motions [Docs. 6 & 7] should be **DENIED**.

## BACKGROUND

**I.**     **Factual Allegations**

The challenged Amended Complaint [Doc. 1-3] contains the following allegations.

1

The plaintiff and her then-husband purchased a 1998 Lincoln Navigator. ([Doc.1-3] at ¶ 9). On March 17, 2008, the couple refinanced their car loan with Mariner Finance, LLC ("Mariner"). (Id. at ¶ 10). On that occasion, the couple also purchased GAP insurance through Mariner, whereby any remaining debt owed by the plaintiff after Mariner receives payment from the plaintiff's auto insurer, Nationwide Mutual Insurance Company ("Nationwide"), would effectively be "cancelled." (Id. at ¶¶ 15, 32). Shortly thereafter, the couple divorced and the plaintiff resumed her maiden name, Kimberly Miller. (Id. at ¶ 11).

In late June 2009, the vehicle was stolen and never found. (Id. at ¶ 12). The plaintiff submitted her claim to Nationwide, which agreed to pay $5,824.15 for the stolen vehicle. (Id. at ¶ 13). The plaintiff and her ex-husband owed more on the vehicle than what Nationwide determined it to be worth. (Id. at ¶ 14). However, relying upon the GAP insurance she and her ex-husband had purchased from Mariner, the plaintiff submitted a claim to Mariner. (Id. at ¶ 32).

On August 6, 2009, the plaintiff signed and returned to Nationwide a General Power of Attorney for Automobile Transactions ("POA"). (Id. at ¶ 18). The form had only one signature line and was drafted solely in the plaintiff's maiden name. (Id.). Thereafter, Nationwide's adjuster advised that the POA needed to be revised to include the plaintiff's former married name and signed again. (Id. at ¶ 19).

On September 10, 2009, the plaintiff signed and returned the second POA, using her maiden name because that was the name in which her Nationwide policy was issued. (Id. at ¶ 20). Nationwide then advised the plaintiff that it would require her to sign a third POA with her former married name because that was the name listed on the title. (Id. at ¶ 21). Moreover, for the first time, Nationwide advised that it would be faxing the plaintiff

a POA for her ex-husband to sign. (Id.).

On September 29, 2009, the plaintiff signed and returned the third POA to Nationwide by the same facsimile number that she had used previously. (Id. at ¶ 22). However, because Nationwide asserted that it did not receive the fax, the plaintiff faxed the POA again on October 16, 2009. (Id.). Nationwide again asserted that it did not receive the fax. (Id.).

On October 28, 2009, Daniel Carey ("Carey"), manager of Mariner's branch in Frederick, Maryland, told the plaintiff he would drive to the plaintiff's workplace in Martinsburg, West Virginia, to secure the POA for Nationwide. (Id. at ¶ 23). Carey also advised that he would send the POA overnight to Nationwide, which would then forward Mariner the $5,824.15, as the lienholder. (Id.). That day, Carey secured the POA. (Id.).

Also on October 28, 2009, Mariner issued a summons against the plaintiff in the District Court of Maryland for Frederick County. (Id. at ¶ 25). Unbeknownst to the plaintiff or her ex-husband, Mariner had sued them in January 2009 for what was, at that time, the unpaid principal amount of $10,136.88 and late charges of $63.98. (Id. at ¶ 26). In fact, the October summons issued against the plaintiff was a renewal, which Mariner authorized against the plaintiff, only. (Id. at ¶ 29). According to the plaintiff, however, she made timely payments on the subject vehicle loan from January 2009 until the car was stolen in June 2009. (Id. at ¶ 30). The January 2009 complaint fails to mention Mariner's anticipated receipt of $5,824.15 from Nationwide or the plaintiff's GAP insurance claim submitted to Mariner. (Id. at ¶ 31-32).

## II. Procedural History

On January 13, 2010, the plaintiff filed suit against the above-captioned defendants

in the Circuit Court of Jefferson County, West Virginia. On March 3, 2010, the plaintiff amended her complaint primarily to correct her oversight in failing to attach her exhibits to the complaint. (See [Doc. 19] at 2, n.1). The Amended Complaint [Doc. 1-3] alleges seven causes of action: (1) breach of contract and first-party bad faith against Nationwide; (2) violations of the West Virginia Unfair Trade Practices Act ("WVUTPA") against Nationwide; (3) breach of contract and first-party bad faith against Mariner; (4) violations of the WVUTPA against Mariner, Carey, and Donald Clawson ("Clawson"), an assistant vice president of Mariner; (5) violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA") against Mariner, Carey, and Clawson; (6) negligent hiring, training, and supervision against Mariner; and (7) injunctive relief against Mariner. ([Doc. 1-3] at 7-15). On March 24, 2010, the defendants removed the above-styled action to the Northern District of West Virginia based upon diversity jurisdiction [Doc.1].

On March 26, 2010, Nationwide filed a timely Answer [Doc. 4], and on March 31, 2010, the remaining defendants filed motions to dismiss. Mariner moves to dismiss the Amended Complaint as to itself for insufficiency of service [Doc. 5]. Specifically, Mariner claims the plaintiff has inaccurately served process on Mariner Finance Mortgage, LLC, an entirely different legal entity. ([Doc. 5-1] at 2). In the alternative, Mariner requests that this Court quash service of process so that the plaintiff may properly serve process. (Id. at 3).

In response, the plaintiff argues that this Court should only quash service. ([Doc. 19] at 3). In support of this argument, the plaintiff states that she has obtained a summons for Mariner from the Clerk and "is actively taking steps to cure any deficiencies in service that may currently exist." (Id.).

Carey and Clawson move to dismiss the Amended Complaint for lack of personal

4

jurisdiction [Docs. 6 & 7]. In arguing that the plaintiff has not met her burden of proving the existence of personal jurisdiction over him, Carey emphasizes that his only contact with West Virginia was a single trip to Martinsburg in an attempt to resolve the plaintiff's insurance claim with Nationwide. ([Doc. 6-1] at 2). Carey further states that he is a resident of Maryland, he does not individually transact business in West Virginia, he does not own or have an individual interest in real property in West Virginia, and he has not contracted to insure any risk in West Virginia. (Id.). Finally, Carey states that he was not a party to the contract, which is the subject of the Amended Complaint. (Id.). In similarly arguing lack of personal jurisdiction, Clawson provides the same support with the exception that he is a Pennsylvania resident and that he did not participate in Carey's trip to Martinsburg. ([Doc. 7-1] at 2).

In response, the plaintiff argues that she has met her burden of proving the existence of personal jurisdiction over both Carey and Clawson [Doc. 18]. In support of this argument, the plaintiff emphasizes that West Virginia is the place of injury. ([Doc. 18] at 2). Specifically, in the Amended Complaint and an Affidavit [Doc. 18-2], the plaintiff claims that Carey and Clawson participated in abusive credit and collection practices against her after she submitted her GAP insurance claim. (Id. at 2-3). According to the plaintiff, these practices included numerous harassing phone calls to the plaintiff's cell phone, her workplace, and her parents' cell phones. ([Doc. 18-2] at ¶¶ 5-10).

## DISCUSSION

I. **Applicable Standards**

   A. **12(b)(4) and (5) Standard**

When sufficiency of service is raised as a defense under Rule 12(b) of the Federal Rules of Civil Procedure, the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4. *See **Wolfe v. Green**, 660 F.Supp.2d 738, 750 (S.D. W.Va. 2009).* When a party has failed to accomplish service of process pursuant to Rule 4, dismissal may be appropriate. ***Id.*** Alternatively, "where the defendants are within the State and amenable to proper service of process, a district court is not required to dismiss the complaint, but may rather quash the service of process." ***Rosenthal v. Jezioro***, No. 2:08-CV-81, 2008 WL 4900563, *2 (N.D. W.Va. 2008) (citing ***Bailey v. Boilermakers Local, 667***, 480 F.Supp. 274, 278 (N.D. W.Va. 1979) ("If the first service of process is ineffective, a motion to dismiss should not be granted, but rather the Court should treat the motion in the alternative, as one to quash the service of process and the case should be retained on the docket pending effective service.").

   B. **12(b)(2) Standard**

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of producing facts that support the existence of jurisdiction. *See **Carefirst of Md., Inc. v. Carefirst Pregnancy Crisis Ctrs., Inc.**, 334 F.3d 390, 396 (4th Cir. 2003)* ("When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff."). Ultimately, plaintiffs must establish personal jurisdiction by a preponderance of the evidence. ***New Wellington Fin. Corp. v.***

*Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005); *Carefirst of Md., Inc.*, 334 F.3d at 396. At this stage of the case, however, a plaintiff must establish a prima facie case for the exercise of personal jurisdiction by pointing to affidavits or other relevant evidence. See *New Wellington Fin. Corp.*, 416 F.3d at 294; *Carefirst of Md., Inc.*, 334 F.3d at 396.

A plaintiff must make two showings to establish personal jurisdiction over a non-consenting, non-resident defendant. First, a plaintiff must show that a statute makes the defendant amenable to process. See e.g., *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) ("A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment."); see also *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 314-15 (1945). Second, maintenance of the suit in the forum at issue must be consistent with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the United States Constitution. *Int'l Shoe Co.*, 326 U.S. at 320.

West Virginia's long-arm statute extends to the constitutional maximum permitted by the Due Process Clause. W.Va. Code § 56-3-33; see also *Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc.*, 294 F.Supp.2d 823, 827 (N.D. W.Va. 2003). Thus, in West Virginia, the issue of personal jurisdiction is simple: whether the exercise of personal jurisdiction would comport with the Due Process Clause. See *Williams v. Adver. Sex LLC*, 2007 WL 2570182, at *3 (N.D. W.Va. Aug. 31, 2007); see also *Christian Sci. Bd. of*

7

***Dirs. v. Nolan***, 259 F.3d 209, 215 (4th Cir. 2001). To comport with the Due Process Clause, a plaintiff must demonstrate that: (1) the non-resident "has 'minimum contacts' with the forum" and (2) "requir[ing] the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" ***Carefirst of Md., Inc.***, 334 F.3d at 397 (quoting ***Int'l Shoe***, 326 at 316); *see also* ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 474-77 (1985).

II. **Analysis**

    A. **Mariner Motion to Dismiss**

In its motion, Mariner contends that the Amended Complaint should be dismissed pursuant to Rule 12(b)(4) and (b)(5), as service was not effectuated against Mariner in conformity with Rule 4. In the alternative, Mariner contends that service of process should be quashed. This Court agrees only with the latter contention.

Citing ***Bailey v. Boilermakers Local, 667***, 480 F.Supp. 274, 278 (N.D. W.Va. 1979), this Court has recognized that, "where the defendants are within the State and amenable to proper service of process, a district court is not required to dismiss the complaint, but may rather quash the service of process." ***Rosenthal v. Jezioro***, No. 2:08-CV-81, 2008 WL 4900563, *2 (N.D. W.Va. 2008). In other words, this Court may, in its discretion, quash service of process instead of granting dismissal.

Here, Mariner is amenable to service of process by way of its GAP insurance contract with the plaintiff, a West Virginia resident. Moreover, Mariner is very aware that the plaintiff is pursuing a remedy in connection with that insurance contract. In fact, on January 18, 2010, the plaintiff forwarded Mariner a courtesy copy of the original complaint.

8

The plaintiff also attempted formal service upon Mariner pursuant to W.Va. Code § 46A-2-137, which permits service on a non-resident for violations of the WVCCPA. Moreover, the plaintiff attempted to serve Mariner pursuant to W.Va. Code § 31B-1-111, which provides for service upon a foreign limited liability company through the West Virginia Secretary of State. On January 20, 2010, the Secretary of State returned the summons and advised the plaintiff that the summons would need to be corrected to Mariner Finance Mortgage, LLC, before service could be accepted. Confusion arose, however, when the plaintiff discovered that Mariner Finance Mortgage, LLC, previously reserved the name, Mariner Finance, LLC, in West Virginia in 2007. Nevertheless, on March 3, 2010, the plaintiff served a copy of the Amended Complaint upon Mariner Finance Mortgage, LLC, pursuant to the Secretary of State's direction.

Therefore, that service of process is insufficient is not the result of a failure to act diligently on the part of the plaintiff. Accordingly, Mariner's request for dismissal is **DENIED**. Instead, this Court **ORDERS QUASHED** the plaintiff's service of process upon Mariner Finance Mortgage, LLC. The plaintiff shall have until **July 9, 2010**, to perfect service upon Mariner Finance, LLC. In the meantime, this case **SHALL REMAIN** on this Court's active docket pending effective service.

    **B.**    **Carey and Clawson Motions to Dismiss**

In their motions, Carey and Clawson contend that this Court lacks personal jurisdiction over them. As a result, Carey and Clawson argue that requiring them to defend against this lawsuit violates their due process rights. This Court disagrees.

As outlined above, to comport with the Due Process Clause, a plaintiff must

9

demonstrate that: (1) the non-resident "has 'minimum contacts' with the forum" and (2) "requir[ing] the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc.*, 334 F.3d at 397 (quoting *Int'l Shoe*, 326 at 316); see also *Burger King Corp.*, 471 U.S. at 474-77 (1985). "When, as here, a district court rules on a Rule 12(b)(2) motion . . . rel[ying] on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619 (4th Cir. 1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs*, 886 F.2d at 676).

Here, the plaintiff has made a sufficient showing for both elements based upon the allegations contained in the Amended Complaint and described in her Affidavit. Specifically, the plaintiff claims that Carey and Clawson participated in abusive credit and collection practices against her after she submitted her GAP insurance claim. According to the plaintiff, these practices included numerous harassing phone calls to the plaintiff's cell phone, her workplace, and her parents' cell phones. Each of these phone calls were made to a West Virginia phone number. The subject of each phone call concerned an insurance contract Mariner entered into with the plaintiff, a West Virginia resident. Construing these allegations in the light most favorable to the plaintiff, this Court finds that the plaintiff has made a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional

10

challenge presented in the Carey and Clawson motions to dismiss. Accordingly, those motions should be **DENIED**.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant Mariner Finance, LLC's Motion to Dismiss [Doc. 5] should be, and hereby is, **GRANTED IN PART**. Specifically, the plaintiff's service of process on Mariner Finance Mortgage, LLC, is hereby **QUASHED**. The plaintiff shall have until **July 9, 2010**, to perfect service on Mariner Finance, LLC. Pending effective service, this case shall remain on the active docket of this Court. Moreover, Defendant Daniel Carey's Motion to Dismiss [Doc. 6] and Defendant Donald Clawson's Motion to Dismiss [Doc. 7] should be, and hereby are, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June 8, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE